*This opinion is subject to revision before final*
*publication in the Pacific Reporter*

**2020 UT 68**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

VIRGINIA PINDER, ESTATE OF ROBERT J. PINDER,
ROAD RUNNER OIL COMPANY, and JJNP RANCHES,
*Appellants,*

*v.*

DUCHESNE COUNTY SHERIFF, DUCHESNE COUNTY ATTORNEY,
and STATE OF UTAH,
*Appellees.*

ESTATE OF ROBERT J. PINDER, VIRGINIA PINDER,
ROAD RUNNER OIL COMPANY, and JJNP RANCHES,
*Appellants,*

*v.*

DUCHESNE COUNTY, *et al.,*[1]
*Appellees.*

No. 20181026
Heard March 11, 2020
Supplemental Briefing Completed July 20, 2020
Filed October 22, 2020

On Direct Appeal

Fourth District, Heber
The Honorable Jennifer A. Brown

---

[1] David L. Boren, personally and in his official capacity as Duchesne County Sheriff, Stephen D. Foote, personally and in his official capacity as Duchesne County Attorney, Jonathan A. Stearmer, personally and in his official capacity as Deputy County Attorney for Duchesne County, Travis Mitchell, in his personal capacity, Sean D. Reyes, in his official capacity as Attorney General for the State of Utah, Michael D. Wims, personally and in his official capacity as an Assistant Utah Attorney General, Brett J. Delporto, personally and in his official capacity as an Assistant Utah Attorney General, and State of Utah.

No. 160500102

Third District, Salt Lake
The Honorable L. Douglas Hogan
No. 150904861

---

Attorneys:

Trent J. Waddoups, Salt Lake City, for appellants

Joshua D. Davidson, Asst. Solic. Gen., Salt Lake City, for appellees
State of Utah, Sean D. Reyes, Michael D. Wims, and Brett
J. Delporto

Jesse C. Trentadue, Noah M. Hoagland, and Sarah Jenkins Dewey,
Salt Lake City, for appellees Duchesne County, Jonathan
A. Stearmer, Stephen D. Foote, David J. Boren, and Travis Mitchell

---

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PEARCE, and JUSTICE PETERSEN joined.

---

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶1    Over twenty years ago, Duchesne County law enforcement seized property belonging to appellants Virginia Pinder, Robert Pinder, Road Runner Oil Company, and JJNP Ranches (collectively, the Pinders) as part of a murder investigation.[2] Although some of the property was admitted into evidence in the murder trial of Virginia and Robert's son (John), most of the property was never used in any criminal proceedings.

¶2    Years later (and after filing two related lawsuits), the Pinders sued Duchesne County and the State of Utah, along with several county and state officials, in the Third District Court to recover the seized property and for damages. The Third District Court dismissed the case for several reasons, but mainly because it believed that the Pinders' causes of action were barred by the Governmental Immunity Act of Utah (UGIA), *see* UTAH CODE §§ 63G-7-101 to -904, and by their applicable statutes of limitations.

---

[2] Robert Pinder died in 2016; his estate has taken his place as a plaintiff.

¶3 While the litigation in the Third District Court was ongoing, the Pinders also filed a petition to recover property in the Fourth District Court. The petition sought to recover the property that had been admitted into evidence in John Pinder's murder trial. The Fourth District Court granted the petition but rejected the Pinders' request for attorney fees.

¶4 The Pinders appealed the Third District Court's dismissal of their claims and the Fourth District Court's denial of attorney fees. We consolidated the cases for appeal. We affirm both the Third District Court's dismissal of the Pinders' causes of action and the Fourth District Court's denial of attorney fees.

## BACKGROUND

¶5 In 1998, Robert and Virginia Pinder's son, John, was investigated for a double homicide. During the investigation, officers from the Duchesne County Sheriff's Office (DCSO) executed search warrants and seized property—including vehicles, guns, family photographs, and ammunition—from the Pinders' ranch in Duchesne County.

¶6 Most of the seized property was never used in criminal proceedings, including in John Pinder's criminal trial, which concluded in 2000. The seized property, however, was not returned to the Pinders until 2017. Over the years, government officials gave several reasons for not returning the property. For example, they said that: (1) they needed the seized property for John Pinder's "ongoing criminal case"; (2) the seized property belonged to John—not to Robert and Virginia; (3) prosecutors needed the seized property in case "additional charges [were] brought against John Pinder, based upon investigations . . . on cold cases; and (4) prosecutors needed it in case John Pinder was "granted a new trial."[3] According to the Pinders, in 2010, a

---

[3] John Pinder "was convicted on eleven felony counts in connection with the murders" of two people. *State v. Pinder* (*Pinder I*), 2005 UT 15, ¶ 1, 114 P.3d 551. His latest challenge to those convictions—a federal habeas petition—was rejected earlier this year. *See Pinder v. Crowther*, 803 F. App'x 165, 167 (10th Cir. 2020) (denying John's request for a certificate of appealability to challenge the federal district court's dismissal of his habeas petition); *Pinder v. State*, 2015 UT 56, ¶¶ 1–3, 367 P.3d 968 (affirming the dismissal of John's petition for relief under the Post–Conviction Remedies Act); *Pinder I*, 2005 UT 15, ¶¶ 1, 19 n.2

(continued . . .)

Duchesne County attorney even told the Pinders' attorney that they "would get the guns back over his dead body."

¶7 Starting in 2009, the Pinders brought four actions (the first in the Eighth District Court, the second in federal district court, the third in the Third District Court, and the fourth in the Fourth District Court) to recover the seized property or damages. These last two actions are the subject of this appeal, but we briefly summarize the other two here as well.

*The Eighth District Action*

¶8 The Pinders first sued for the return of their property in 2009 in the Eighth District Court (Eighth District Action). Their complaint named the sheriff of Duchesne County, Travis Mitchell, as the only defendant. It alleged that law enforcement officers from DCSO had unlawfully seized property from the Pinders' ranch in 1998. The Pinders demanded that Sheriff Mitchell return or pay damages for "the property listed [in the complaint] and any other personal property removed from the possession" of the Pinders. The Eighth District Court dismissed the case without prejudice in 2010, holding that it lacked subject matter jurisdiction because the Pinders had not complied with the UGIA by serving a notice of claim on a Duchesne County official before suing.

*The Federal Action*

¶9 After the Eighth District Action ended, the Pinders sent a letter to the Duchesne County Clerk-Auditor (2011 Notice of Claim) on January 1, 2011, demanding the return of the property and giving notice of their intent to bring a claim under 42 U.S.C. section 1983 in federal court. Having received no response, the Pinders sued Sheriff Mitchell six months later in the federal district court for the District of Utah (the Federal Action). The federal district court dismissed the case on ripeness grounds because the Pinders had not pursued their state law remedies. *Pinder v. Mitchell*, No. 2:11CV508 DAK, 2015 WL 461352, at \*2 (D. Utah Feb. 3, 2015). The Tenth Circuit Court of Appeals later affirmed. *Pinder v. Mitchell*, 658 F. App'x 451, 456–57 (10th Cir. 2016).

*The Third District Action*

¶10 While the appeal of the Federal Action was pending, the Pinders sued again on July 16, 2015, in the Third District Court

---

(affirming, on direct appeal, John's convictions of two counts of aggravated murder and related crimes).

(Third District Action), which is one of the two cases before us on appeal. They did not file a new notice of claim under the UGIA before doing so. The Pinders did, however, file a notice of claim on October 28, 2016 (2016 Notice of Claim), asking for damages for the "wrongful taking, damaging, seizure, and retention of the [Pinders'] personal property."

¶11   The Pinders' amended complaint (filed May 1, 2017) named several defendants: (1) Duchesne County, former sheriffs David Boren and Travis Mitchell, county attorney Stephen Foote, deputy county attorney Jonathan Stearmer (collectively, County defendants); and (2) the State of Utah, Utah Attorney General Sean Reyes, and Assistant Utah Attorneys General (AAGs) Michael Wims and Brett Delporto (collectively, State defendants). It also asserted six causes of action that are relevant to this appeal: (1) inverse condemnation,[4] (2) conversion; (3) federal due process; (4) civil conspiracy; (5) negligence; and (6) a sixth cause of action, entitled "Declaratory Relief, Theft and Treble Damages" (Sixth Cause of Action), in which the Pinders sought a declaration that the defendants committed criminal acts.

¶12   The Pinders' amended complaint alleged that the defendants seized their property in November 1998 and that the defendants had "concocted many frivolous legal theories over the past 18+ years to attempt to interfere with [the Pinders'] right to possess their own property." It also alleged that the defendants had "never proffered any genuine, lawful or non-frivolous reason for continually refusing to return [the Pinders'] property or 'provide just compensation.'" It further asserted that the defendants had "insisted that the [Pinders'] property might possibly be used as 'evidence' in the future even though it [had] never been used or held as 'evidence.'"

---

[4] The Pinders call their inverse condemnation action a takings claim. But it is properly characterized as an inverse condemnation action because that is the action that a property owner may bring when the government has allegedly taken or damaged private property for public use "without a formal exercise of the eminent domain power." *Farmers New World Life Ins. Co. v. Bountiful City*, 803 P.2d 1241, 1243 (Utah 1990) (emphasis omitted). For that reason, we refer to the Pinders' "takings claim" as an inverse-condemnation claim, although we recognize that the parties and the district court refer to it as a takings claim. The name we use for the claim makes no difference to our analysis.

¶13 Responding to the Pinders' allegations, the County defendants filed several motions for summary judgment. Similarly, the State defendants moved to dismiss the amended complaint under rule 12(b)(6) of the Utah Rules of Civil Procedure. As detailed below, the Third District Court granted the defendants' motions, leading to the dismissal of all the Pinders' claims against all the defendants. Here, we summarize the County defendants' motions for summary judgment; then we go over the State defendants' motion to dismiss.

¶14 The County defendants first moved for summary judgment on the Pinders' actions for conversion, negligence, and declaratory relief. They argued that the Pinders' "claims accrued no later than September 2, 2009," the date they filed the Eighth District Action, and so were barred by both (1) the UGIA's notice-of-claim provisions and (2) the applicable statutes of limitations. The Third District Court granted this motion because, in its view, "the challenged claims likely accrued in 2000," and so the Pinders, under the UGIA, should have filed a notice of claim by 2001 but did not do so until 2016. *See* UTAH CODE § 63G-7-402 (barring a claim against a governmental entity or its employee "unless notice of claim is filed . . . within one year after the claim arises").

¶15 The County defendants then moved for summary judgment on the federal due process claim that the Pinders brought under 42 U.S.C. section 1983. The Third District Court granted this motion, holding that the Pinders' "due process rights [had] not been violated."

¶16 Finally, the County defendants moved for summary judgment on the inverse condemnation and civil conspiracy actions. Relevant here, the Third District Court granted the motion, holding that the causes of action were barred by their applicable statutes of limitations.

¶17 The Third District Court thus dismissed on summary judgment all the Pinders' causes of action against the County defendants.

¶18 The State defendants moved to dismiss all the claims in the amended complaint under rule 12(b)(6) of the Utah Rules of Civil Procedure. Among other things, they argued that (1) the claims were barred by the UGIA because the Pinders did not serve a notice of claim on the State defendants before suing, let alone within one year of their claims accruing; (2) there is no taking when law enforcement seizes and holds potential evidence; and (3) each cause of action was barred by the applicable statute

of limitations because the Pinders' "claims accrued in November, 1998, the date the property was seized."

¶19 The Pinders opposed the State defendants' motion to dismiss, but only as to the AAGs—not as to the State of Utah and the Attorney General. They did so because, at the time, the State and the Attorney General were in default. The Pinders even said in their opposition that they "limit their response to" the "non-defaulting parties."

¶20 After the Pinders filed their opposition, the Third District Court set aside the State and Attorney General's entry of default. It then gave the Pinders fourteen days to file any opposition against the motion to dismiss as to the State and the Attorney General. The Pinders did not do so. The court, as a result, held in granting the State defendants' motion to dismiss that the Pinders had not opposed the motion as to the State and the Attorney General.

¶21 The Third District Court then provided a litany of reasons for why the Pinders' claims against the AAGs were barred. Relevant here, it held that the UGIA barred the claims because the Pinders did not "file a notice of claim within one year of their injury and before filing suit."[5] *See* UTAH CODE § 63G-7-402. Additionally, held the Third District Court, all the Pinders' claims were barred by their applicable statutes of limitations because their claims accrued "certainly by 2009 when [the Pinders] initially brought suit . . . , if not earlier."

¶22 With that, the Third District Court had dismissed all the claims against all the defendants.

*The Fourth District Action*

¶23 On June 13, 2016 (while the Third District Action was pending), the Attorney General wrote to DCSO to notify it that the State no longer needed to retain most of the property that the Pinders claimed was theirs and that "most of the items held [could] be returned or disposed of as allowed by statute." DCSO, in turn, wrote to Virginia Pinder the following month to tell her that "many items being held in the [sheriff's office's] evidence room no longer need[ed] to be held as evidence."

---

[5] In a later ruling, the Third District Court clarified that the UGIA did not bar the inverse condemnation claim but that it was still barred by the statute of limitations.

¶24   After receiving the letter from DCSO, the Pinders filed the 2016 Notice of Claim with the County defendants and State defendants, demanding damages for the "wrongful taking, damaging, seizure, and retention of the [Pinders'] personal property."

¶25   Days later, the Pinders filed a petition under Utah Code section 24-3-104 in the Fourth District Court (the Fourth District Action), which is the other case before us on appeal. They sought the "prompt and expeditious return of all their property," including property that had been received by the Fourth District Court when it conducted John Pinder's trial.

¶26   The Fourth District Court eventually granted the Pinders' petition in October 2017, ordering the return of the property listed in the petition (except for the property admitted into evidence at John Pinder's criminal trial). The property was then returned to the Pinders.

¶27   Meanwhile, the Pinders had requested an award of attorney fees under state and federal statutes. The Fourth District Court denied that request because it believed that the Pinders had not identified "a statute or contract which authorizes an award of attorney fees."

*The Appeal*

¶28   The Pinders appealed the dismissal of their claims in the Third District Action and the denial of attorney fees in the Fourth District Action. We consolidated the appeals. After oral argument, we requested supplemental briefing from the parties about subject matter jurisdiction under the UGIA over four of the causes of action in the Third District Action and over the request for attorney fees in the Fourth District Action.

¶29   We exercise jurisdiction under Utah Code section 78A-3-102(3)(j).

**STANDARDS OF REVIEW**

¶30   We review whether the Third District Court had subject matter jurisdiction over the Pinders' causes of action. Whether a district court has subject matter jurisdiction is a question of law, and we thus review it for correctness. *Amundsen v. Univ. of Utah*, 2019 UT 49, ¶ 19, 448 P.3d 1224 (citation omitted).

¶31   We also review whether the Third District Court erred in dismissing the inverse condemnation and federal due process claims and the Sixth Cause of Action by granting the County defendants' motions for summary judgment and the State

defendants' rule 12(b)(6) motion to dismiss.[6] Our method of reviewing an order granting summary judgment differs from the one we use to review an order granting a rule 12(b)(6) motion to dismiss. Although we review both for correctness, *Ruiz v. Killebrew*, 2020 UT 6, ¶ 7, 459 P.3d 1005 (summary judgment); *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 7, 342 P.3d 224 (rule 12(b)(6) motion to dismiss), the underlying standards are different. Summary judgment is proper only if "the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." UTAH R. CIV. P. 56(a). But dismissal under rule 12(b)(6) is proper only if—accepting the plaintiff's description of facts alleged in the complaint to be true—the plaintiff "can prove no set of facts in support of his claim." *Am. W. Bank Members, L.C.*, 2014 UT 49, ¶ 7 (citation omitted).

¶32 Finally, we review the Fourth District Court's decision to deny the Pinders' requests for attorney fees. We review for correctness whether the Fourth District Court has subject matter jurisdiction over those requests. *See supra* ¶ 30. Because we hold that the Fourth District Court did have subject matter jurisdiction, we then review its denial of attorney fees under Utah Code section 78B-5-825 and 42 U.S.C. 1988. As for Utah Code section 78B-5-825, Utah appellate courts review whether a defense is meritless for correctness, but we review whether it was raised in bad faith for clear error. *Kirkham v. Widdison*, 2019 UT App 97, ¶ 21, 447 P.3d 89 (citing *Bresee v. Barton*, 2016 UT App 220, ¶ 15, 387 P.3d 536). And as for 42 U.S.C. 1988, we review the denial of attorney fees for abuse of discretion. *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994) (citation omitted).

## ANALYSIS

¶33 We first review the Pinders' appeal of the Third District Action. We affirm the dismissal of all the causes of action brought in that suit. Then, we review the Pinders' appeal of the Fourth

---

[6] The Third District Court treated the State defendants' motion to dismiss on statute of limitations grounds as a rule 12(b)(6) motion. We do the same, given that the Pinders have not challenged that treatment on appeal. *But see Tucker v. State Farm Mut. Auto. Ins. Co.*, 2002 UT 54, ¶ 11, 53 P.3d 947 (holding that a defendant may raise a statute of limitations defense in a motion to dismiss under civil rule 12(b)(6), "provided that the trial court treats the motion as one for summary judgment").

District Action—specifically the Fourth District Court's denial of the Pinders' requests for attorney fees. We affirm that denial.[7]

## I. THE THIRD DISTRICT ACTION

¶34   We begin with our review of the Third District Action by reviewing whether the Third District Court erred in determining when the Pinders' claims accrued. Then, we determine whether the Third District Court lacked subject matter jurisdiction over any of the Pinders' claims.[8] After that, we determine whether the Third District Court erred in holding that the remaining claims were barred by the statutes of limitations. Finally, we sort out two issues that involve waiver and preservation. As a result of those two issues, we need not address the causes of action against the State of Utah and the Attorney General in this opinion, nor the Pinders' due process claim against any of the defendants. We ultimately affirm the outcome of the Third District Action.

*A. When the Pinders' Causes of Action Accrued*

¶35   Because the timing of the accrual of the Pinders' claims is critical to our discussion of subject matter jurisdiction under the UGIA and the statute of limitations, *see infra* ¶¶ 67, 71, we now determine whether the Third District Court erred in determining when the Pinders' claims accrued.

---

[7] The Pinders moved for summary judgment in both the Third District Action and the Fourth District Action, asking the respective district courts to hold that "all forms of civil forfeiture are unconstitutional." Each court denied the motion. The Fourth District Court denied the motion as seeking an "improper advisory opinion" and as moot. The Third District Court similarly held that "any ruling on this issue would amount to an impermissible advisory opinion." Even though the Pinders argue in their reply brief that "all forms of the civil forfeiture side hustle are unlawful," the Pinders have not challenged the district courts' holdings that any ruling on the issue would be an advisory opinion. We thus do not address here whether civil forfeiture is constitutional.

[8] We generally begin our analysis with subject matter jurisdiction (when it is an issue), but here we discuss the accrual date first, given that when the Pinders' claims accrued determines, in part, whether the district court had subject matter jurisdiction over them.

¶36    Before doing so, we underscore an appellant's burden of persuasion on appeal. It is the appellant's job to tell us where and how the district court went wrong. *Kendall v. Olsen*, 2017 UT 38, ¶ 12, 424 P.3d 12 ("Our rules of appellate procedure place the burden on the appellant to identify and brief any asserted grounds for reversal of the decision below."); *Polyglycoat Corp. v. Holcomb*, 591 P.2d 449, 450–51 (Utah 1979) ("On appeal, it is appellant's burden to convince this Court that the trial court exceeded its authority."). In other words, an appellant must provide "sufficient argument for ruling in its favor." *Bank of Am. v. Adamson*, 2017 UT 2, ¶ 12, 391 P.3d 196 (citation omitted). To do that, the "appellant's brief must assert contentions of error that occurred in the proceedings below *and* develop a reasoned argument for why the purported errors should be reversed." *Anderson v. Anderson*, 2018 UT App 19, ¶ 24, 414 P.3d 1069; *see also* UTAH R. APP. P. 24(a)(8) ("The argument must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal."). "[A]n appellant who fails to adequately brief an issue 'will almost certainly fail to carry its burden of persuasion on appeal.'" *Bank of Am.*, 2017 UT 2, ¶ 12 (citation omitted).

¶37    Keeping the Pinders' burden of persuasion in mind, we note that a cause of action accrues "upon the happening of the last event necessary to complete the cause of action." *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 20, 108 P.3d 741 (citation omitted); *see also Gressman v. State*, 2013 UT 63, ¶ 20, 323 P.3d 998 ("A cause of action arises 'when it becomes remediable in the courts,' which normally occurs when 'all elements of a cause of action come into being.'" (citation omitted)).

¶38    Now, we review when the causes of action against the County defendants accrued. Then, we do the same for those against the AAGs.

1. County Defendants

¶39    We now review whether the Third District Court erred in determining when the Pinders' claims against the County defendants accrued. In addressing the County defendants' motions for summary judgment, the Third District Court held that the negligence claim, the conversion claim, and the Sixth Cause of Action accrued in 2000 and that the civil conspiracy and inverse condemnation actions accrued by 2009. Below, we discuss how the district court arrived at those accrual dates. Then, we hold that the Pinders have failed to carry their burden of persuasion on

their argument that the Third District Court erred in holding that the causes of action accrued on those dates.

¶40    First, the Third District Court held that the Pinders' negligence claim accrued in 2000. The Third District Court explained when each element of negligence had allegedly come into being: that the County defendants "owed [the Pinders] a duty to lawfully use, return, or forfeit property," that the defendants "breached that duty . . . by instead continuing to simply hold [the Pinders'] property without legal justification," and that the defendants' "actions caused them injury by depriving them of the possession of their property." *See Scott v. Universal Sales, Inc.*, 2015 UT 64, ¶ 25, 356 P.3d 1172 ("Negligence claims have four distinct elements—duty, breach, causation, and damages."). The Third District Court then held that, because the County defendants allegedly "neglected to take any lawful action to use, forfeit, or return" the Pinders' property in 2000, their negligence claim accrued at that time.

¶41    Second, the Third District Court held that the Pinders' conversion claim accrued in 2000. It reasoned that the elements of the conversion claim came into being by 2000: the County defendants "unlawfully deprived [the Pinders] of property not when [the County defendants] seized it, but when they failed to either use it at trial, return it, or forfeit it," which was in 2000. *See Allred v. Hinkley*, 328 P.2d 726, 728 (Utah 1958) ("A conversion is an act of [willful] interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession.").

¶42    Third, the Third District Court held that the Sixth Cause of Action against the County defendants accrued in 2000. The Third District Court explained when each element of the declaratory relief action was met:

> Here, a justiciable controversy began in 2000, when [the County defendants] allegedly failed to lawfully use, forfeit, or return [the Pinders'] property. The parties' interests were and are adverse. [The Pinders] have a legally protectable interest in the return of the property. These issues became ripe for determination when [the County defendants] allegedly failed to exercise any legally available option to use, forfeit, or return [the Pinders'] property in 2000. . . . [The Pinders'] claim for declaratory relief accrued at that time.

*See Bd. of Trs. of Wash. Cnty. Water Conservancy Dist. v. Keystone Conversions, LLC*, 2004 UT 84, ¶ 32, 103 P.3d 686 ("In a declaratory action . . . , a party seeking a declaration of rights must show the existence of '(1) a justiciable controversy, (2) parties whose interests are adverse, (3) a legally protectible interest residing with the party seeking relief, and (4) issues ripe for determination.'" (citation omitted)).

¶43 Fourth, the Third District Court held that the civil conspiracy claim accrued "by 2009." In so doing, it noted that the "decision to retain the property was evidently made shortly after the conclusion of John Pinder's trial." The State defendants, wrote the Third District Court, "took the position that they needed to retain the property while the appeals process played out and while ancillary criminal investigations were conducted." But, in the Third District Court's view, "[e]ven accepting [the Pinders'] assertion that [the State defendants] wrongfully directed [the County defendants] to retain the property or conspired with those defendants to deprive [the Pinders] of their property, they did so many years ago—certainly by 2009 when [the Pinders] initially brought suit." *See Pohl, Inc. of Am. v. Webelhuth*, 2008 UT 89, ¶ 29, 201 P.3d 944 ("[C]ivil conspiracy requires proof of . . . '(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof.'" (citation omitted)).

¶44 Fifth, the Third District Court held that the Pinders' inverse condemnation claim against the County defendants had accrued at least by 2009. The Pinders, reasoned the Third District Court, had "alleged a taking since at least 2009, when they filed suit in Utah Eighth District Court." *See also Farmers New World Life Ins. Co. v. Bountiful City*, 803 P.2d 1241, 1244 (Utah 1990) ("[A]n inverse condemnation action requires (1) property, (2) a taking or damages, and (3) a public use.").

¶45 As can be seen, the Third District Court made several thorough rulings on *when* each of the Pinders' claims against the County defendants accrued. In doing so, the Third District Court set out the elements of each cause of action and analyzed how and when the material undisputed facts fit into those causes of action. By doing that, the Third District Court determined "the happening of the last event necessary to complete [each] cause of action." *Russell Packard*, 2005 UT 14, ¶ 20 (citation omitted) (internal quotation marks omitted). That happening, in turn, determined the accrual date of each cause of action.

¶46   To reverse the Third District Court's rulings on when the claims accrued, we would need to find that it erred in its reasoning about when the "last event necessary to complete [each] cause of action" occurred. Specifically, we would need to find that the Third District Court erred by holding that the "last event necessary" to complete (1) the negligence claim, the conversion claim, and Sixth Cause of Action occurred in 2000 and (2) the civil conspiracy and inverse condemnation claims occurred by 2009.

¶47   Take, for example, the district court's ruling on the inverse condemnation claim. The Third District Court believed that the Pinders' inverse condemnation claim accrued at least by 2009, when the Pinders brought the Eighth District Action. The Third District Court thus implicitly held that the inverse condemnation action alleged in the Third District Action was based on the same facts as the claim the Pinders had brought six years earlier in the Eighth District Action. *See supra* ¶ 8. And if the claim had already existed six years earlier, the "last event necessary to complete the cause of action" had also occurred six years earlier, meaning the claim had accrued six years earlier as well. To reverse that ruling, we would need to conclude that the claim that the Pinders brought in the Eighth District Action was somehow different than the inverse condemnation action they brought in the Third District Action.

¶48   And in reviewing the Third District Court's rulings, we rely on the Pinders, as the appellants, to identify and brief whether the Third District Court was wrong in its analysis. *Supra* ¶ 36 (discussing an appellant's burden of persuasion on appeal). The Pinders' analysis (especially in their opening brief), however, is sparse as to how the Third District Court erred in determining when the claims accrued. In their briefing, they did not go through the elements of each cause of action and argue why the Third District Court erred (if at all) in its reasoning about when the "last event necessary to complete" each of the causes of action occurred.

¶49   Returning to the inverse condemnation example we used above, the Pinders have not argued on appeal that the claim that they brought in the Eighth District Action was somehow different than the claim they now bring in the Third District Action. Instead, without explanation, they argue only that the Pinders' "gripes raised earlier were not *ipse dixit* the accrual of [their] legal claims as the Third District Court erroneously concluded." Moreover, some of the Pinders' arguments even support the idea that their inverse condemnation action existed by the time they

filed the Eighth District Action. For example, they argue on appeal that the defendants "could have, and should have, assessed their rights and obligations under the Utah Constitution and *acted lawfully before . . . the four lawsuits*" and that "[a]ll five of [their] underlying cases related to the same issue of [the defendants'] refusal to return or pay for [the Pinders'] property." (Emphases added.) They further argue that the "retention of [the] property for about 19 years while the government interfered with [the Pinders'] right to possess [their] own property is precisely the harm of which [they] complain[]."

¶50   Rather than arguing that the "last event necessary to complete" each of their causes of action occurred at some later time (and thus that their causes of action accrued at a later time), the Pinders argue, under the doctrine of judicial estoppel, that their claims accrued in 2016 (*after* they filed the Third District Action): "Because the defendants successfully insisted in prior proceedings that [the Pinders'] claims would only accrue once 'the prosecutor' agreed to release [their] property, the defendants were estopped to deny that [their] claims only arose when the Utah Attorney General finally provided notice in 2016." But the Pinders make this argument without even citing the record. This conclusory argument is not the type of "reasoned analysis" that allows us to rule in a party's favor. *See* UTAH R. APP. P. 24(a)(8).

¶51   In their reply brief, the Pinders argue that the "trial courts' focus on the time of the interference was error because 'refusal' to pay is the relevant triggering event." But refusal to pay is not an element of any of the causes of action that the Pinders brought. *See supra* ¶¶ 40–44 (listing the elements of the Pinders' causes of action). And when we determine when a cause of action accrues, we focus on when "all *elements* of a cause of action come into being." *Gressman*, 2013 UT 63, ¶ 20 (emphasis added) (citation omitted). Because refusal to pay is not an element of any of the causes of action, it is not relevant to accrual.

¶52   Given the Pinders' briefing about the accrual of their causes of action, we have no basis to conclude that the Third District Court erred in holding that the negligence claim, the conversion claim, and the Sixth Cause of Action accrued in 2000 and that the civil conspiracy and inverse condemnation claims accrued by 2009. Thus, in our analysis below (addressing the UGIA and the statute of limitations), *infra* ¶¶ 68–69, 72, 81, we rely on these accrual dates.

2. Assistant Attorneys General

¶53　We now review whether the Third District Court erred in determining when the Pinders' claims against the AAGs accrued. The Third District Court held that all the Pinders' claims against the AAGs accrued at least by 2009. After explaining the Third District Court's reasons for this conclusion, we hold that, as with the County defendants, the Pinders have failed to carry their burden of persuasion on their argument that the Third District Court erred in holding that the causes of action accrued by 2009.

¶54　The Third District Court held that all the Pinders' claims against the AAGs accrued at least by 2009. In the Third District Court's view, all the Pinders' claims (including the claim for declaratory relief), accrued "certainly by 2009 . . . , if not earlier":

> All of these claims flow from [the AAGs'] allegedly wrongful refusal to return [the Pinders'] property. The decision to retain the property was evidently made shortly after the conclusion of John Pinder's trial. [The AAGs] took the position that they needed to retain the property while the appeals process played out and while ancillary criminal investigations were conducted. Even accepting [the Pinders'] assertion that [the AAGs] wrongfully directed [the County defendants] to retain the property or conspired with those defendants to deprive [the Pinders] of their property, they did so many years ago—certainly by 2009 when [the Pinders] initially brought suit. Plaintiffs' claims accrued at that time, if not earlier.

¶55　The Third District Court thus relied on two points in holding that the claims against the AAGs accrued by 2009: (1) that the "allegedly wrongful refusal to return" the Pinders' property occurred "shortly after the conclusion of John Pinder's trial" (which concluded in 2000) and (2) that even if the State defendants did wrongfully direct the County defendants to retain the property, they did so before the Pinders brought the Eighth District Action in 2009.

¶56　To reverse the Third District Court, we would need to find that it erred by holding that the Pinders' causes of action accrued in 2000 or at least by 2009. And to do that, we would need to find that it erred by implicitly holding that the last event necessary to complete the Pinders' causes of action happened by the end of John Pinder's trial (in 2000), when the "property had not been presented as evidence, forfeited, or returned to [the

Pinders]" or by 2009 when the Pinders filed the Eighth District Action. But the Pinders have not engaged with those holdings on appeal. They have not argued that the Third District Court erred in finding that the wrongful refusal to return the property first occurred just after John Pinder's trial ended in 2000. Neither have they argued that the Third District Court erred in finding that the AAGs wrongfully directed the County defendants (assuming that they did) *before* 2009. Rather, their arguments on appeal support the argument that their claims existed by 2009. For example, they argue that the defendants' "violations *over 19 years* were flagrant because the government did not attempt to invoke lawful options available to it" and that the defendants "went to extraordinary lengths to prevent judicial review of their side hustle *for two decades*." (Emphases added.)

¶57   We, therefore, have no basis to conclude that the Third District Court erred in holding that all the claims against the AAGs accrued by 2009.

### B. Subject Matter Jurisdiction

¶58   Here, we address whether the Third District Court had subject matter jurisdiction over the Pinders' causes of action against the County defendants and AAGs under the UGIA. We hold that the Third District Court did not have subject matter jurisdiction over the negligence, conversion, and civil conspiracy claims.[9] It had subject matter jurisdiction over the Sixth Cause of Action ("Declaratory Relief, Theft, and Treble Damages") against the County defendants, to the extent the Sixth Cause of Action is a claim for declaratory relief.[10] It did not have subject matter jurisdiction over the Sixth Cause of Action, however, to the extent it is an asserted demand for or cause of action for money or damages.

---

[9] The UGIA does not apply to constitutional claims. *Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17, ¶ 51, 250 P.3d 465. So, it does not apply to the Pinders' inverse condemnation and federal due process claims. The Third District Court, therefore, had subject matter jurisdiction over those claims, regardless of whether the Pinders complied with the UGIA.

[10] But to the extent the Sixth Cause of Action is a claim for declaratory relief, it is barred by the statute of limitations. *Infra* ¶¶ 72–73, 81.

¶59   The UGIA grants these entities and employees "'broad, background immunity' from injuries that result due to the exercise of a governmental function." *Wheeler v. McPherson*, 2002 UT 16, ¶ 10, 40 P.3d 632 (citation omitted). But the UGIA does waive governmental immunity under "narrow[] parameters." *Id.* To "sue a governmental entity under these parameters, potential plaintiffs must first provide, as a prerequisite to filing suit, formal 'notice of claim' to the appropriate governmental official." *Id.* When potential plaintiffs fail to do so, a district court lacks subject matter jurisdiction over any claims they later bring. *Amundsen v. Univ. of Utah*, 2019 UT 49, ¶ 19, 448 P.3d 1224.

¶60   So, to determine whether the Third District Court had subject matter jurisdiction over the negligence, conversion, and civil conspiracy claims and over the Sixth Cause of Action, we must first determine whether they are "claims" under the UGIA. If they are not, the UGIA's notice-of-claim provisions do not apply to them. *See* UTAH CODE § 63G-7-101(2)(b). But if they are claims, we must determine whether the Pinders followed the UGIA's notice-of-claim provisions.

¶61   A claim under the UGIA is "any asserted demand for or cause of action for *money or damages*, whether arising under the common law, under state constitutional provisions, or under state statutes, against a governmental entity or against an employee in the employee's personal capacity." UTAH CODE § 63G-7-102 (emphasis added). Here, the Pinders' causes of action for conversion, civil conspiracy, and negligence are claims under the UGIA because they are all "cause[s] of action for money or damages" against governmental entities and employees.[11] So, the UGIA's notice-of-claim provisions apply to them.

_____

[11] The Pinders seemingly argue in their supplemental briefs that because their causes of action all related to a constitutional taking, none of them are subject to the UGIA. The Pinders also argue in their supplemental briefs we should disavow our case law that says that the district court lacks subject matter jurisdiction over a claim when the plaintiff has not complied with the UGIA. We do not address these arguments. Not only were they outside the scope of our supplemental briefing order, but the Pinders could have raised them in their opening brief on appeal but did not. A supplemental brief is not a place for a party to tack on arguments that they could have made in their usual appellate briefing but chose not to.

(continued . . .)

¶62   Whether the Pinders' Sixth Cause of Action is a claim, however, requires a more nuanced analysis. In the Sixth Cause of Action (which the Pinders labeled "Declaratory Relief, Theft and Treble Damages"), the Pinders allege that the defendants "knowingly failed to comply with the law which requires return of personal property" and that they "knowingly interfered with [the Pinders'] efforts to reacquire their own property." The Pinders accordingly "seek a judicial declaration that the Court determine whether [the defendants] . . . committed acts which, if prove[n] in the appropriate forum, would be criminal and upon making such a determination to refer the appropriate individuals to the appropriate authorities." The Pinders copied into their complaint the text of several criminal statutes, including a theft statute that makes individuals who violate certain statutes "civilly liable for three times the amount of actual damages." *See* UTAH CODE § 76-6-412(2). The Pinders did not explicitly ask for damages in the paragraphs under the heading of their Sixth Cause of Action, but in their prayer for relief, they asked the court to, among other things, "[d]eclare and adjudge the controversy described herein; . . . [i]ssue a declaratory judgment that the policies, practices, acts and omissions complain[ed] of herein violated [the Pinders'] rights; . . . [r]esolve the criminal proceedings in favor of [the Pinders];" and "[a]ward [the Pinders] all the relief sought herein including actual damages, *treble damages*, and punitive damages." (Emphasis added.)

¶63   The Sixth Cause of Action appears to be both an action for declaratory relief and a cause of action for damages. It is an action for declaratory relief because it asks the court for a "judicial declaration" about "whether [the defendants] . . . committed acts which, if proved in the appropriate forum, would be criminal and upon making such a determination to refer the appropriate individuals to appropriate authorities." And it appears to be a cause of action for damages because, not only did the Pinders label it as "Declaratory Relief, Theft and Treble Damages," but at the end of the amended complaint, the Pinders requested treble damages (besides actual and punitive damages). That request must refer to the Sixth Cause of Action, since the only other reference the Pinders make to treble damages in the amended complaint is in the Sixth Cause of Action. In short, the Sixth Cause of Action is a sort of Frankenstein's monster: part action for declaratory relief, part action for damages.

¶64   Declaratory relief actions are not subject to the UGIA because they are not "asserted demand[s] for or cause[s] of action *for money or damages*." UTAH CODE § 63G-7-102(2) (emphasis added); *see also Houghton v. Dep't of Health*, 2005 UT 63, ¶ 19 n.3, 125 P.3d 860 (recognizing that "equitable claims are not governed" by the UGIA's notice-of-claim provisions); *Jenkins v. Swan*, 675 P.2d 1145, 1154 (Utah 1983) (holding that equitable claims, such as claims for declaratory relief, are not subject to the UGIA). Thus, to the extent that the Sixth Cause of Action is merely a declaratory relief claim, the UGIA does not apply. That being said, to the extent that the Pinders assert a cause of action for damages, including treble damages, it is a "claim" and the UGIA applies.

¶65   Having determined that the negligence, conversion, and civil conspiracy claims and (to a large extent) the Sixth Cause of Action are claims subject to the UGIA, we now consider whether the Pinders followed the UGIA's notice-of-claim provisions. They did not, and so the Third District Court lacked subject matter jurisdiction over these claims.

¶66   Potential plaintiffs who look to bring a claim against a governmental entity or a governmental entity's employee in the district courts must carefully comply with the UGIA's notice-of-claim provisions. *Amundsen*, 2019 UT 49, ¶¶ 19, 29. If they do not do so, the district court lacks subject matter jurisdiction over the claim and must dismiss it. *Id.*

¶67   Relevant here, the UGIA requires a claimant to file a notice of claim with the appropriate government official "within one year after the claim arises." UTAH CODE § 63G-7-402. A "claim arises when the statute of limitations that would apply if the claim were against a private person begins to run."[12] *Id.* § 63G-7-401(1)(a). We now examine whether the Pinders filed a timely notice of claim with the County defendants and the AAGs.

---

[12] We requested supplemental briefing on whether the Pinders had filed a notice of claim "before maintaining an action" against the defendants, including whether the 2011 Notice of Claim and 2016 Notice of Claim could satisfy that requirement. *See* UTAH CODE § 63G-7-401. Upon further review, both notices of claim were filed too late under the UGIA. *Infra* ¶¶ 68–69. As a result, we need not address whether they were filed before maintaining the Third District Action.

### 1. County Defendants

¶68   The Pinders did not follow the UGIA before bringing their negligence claim, conversion claim, the Sixth Cause of Action, and the civil conspiracy claim against the County defendants. That is because the first three claims accrued in 2000 and the civil conspiracy claim accrued by 2009. *Supra* ¶ 52. So, those claims arose at those times. Under Utah Code section 63G-7-402, then, the Pinders had to file a notice of claim with the appropriate government official by 2001 for the negligence claim, the conversion claim, and the Sixth Cause of Action and by 2010 for the civil conspiracy action. But they did not file any notice of claim whatsoever with Duchesne County until 2011, when they filed the 2011 Notice of Claim. They thus did not follow the UGIA's notice-of-claim provisions, and the Third District Court lacked subject matter jurisdiction over those claims.

### 2. Assistant Attorneys General

¶69   Neither did the Pinders comply with the UGIA before bringing their negligence claim, conversion claim, the Sixth Cause of Action, and the civil conspiracy claim against the AAGs. Those claims all accrued, and thus arose, by at least 2009. *Supra* ¶ 57. So, under the UGIA, the Pinders needed to file a notice of claim within one year—by 2010. The Pinders, however, did not file a notice of claim with the AAGs until 2016. As a result, they failed to comply with the UGIA, and the Third District Court lacked subject matter jurisdiction over the negligence, conversion, and civil conspiracy claims and over the Sixth Cause of Action.

### *C. Statute of Limitations*

¶70   We now address whether the inverse condemnation action[13] and the Sixth Cause of Action (to the extent that it is a declaratory relief claim) are barred by the statute of limitations.

---

[13] Here, we need not and do not opine on whether the Pinders even state a valid claim for relief for inverse condemnation under article I, section 22 of the Utah Constitution, which prohibits private property from being "taken or damaged for public use without just compensation." They argue that the defendants took and damaged their property "for the public use of prosecuting" John Pinder. They, however, provide no originalist analysis of the meaning of "taken for public use" and whether the term includes the potential use of property as evidence in criminal proceedings.

(continued . . .)

¶71   A statute of limitations prescribes the time in which the plaintiff must bring a cause of action. In this realm, one should not live by the proverb "slow and steady wins the race." The statute of limitations for a cause of action begins to run when "the cause of action has accrued." UTAH CODE § 78B-2-102. And if a plaintiff does not bring the cause of action within the limitations period, the action is barred. *Davis v. Provo City Corp.*, 2008 UT 59, ¶ 27, 193 P.3d 86. The statute of limitations for both an inverse condemnation and a declaratory relief action is four years. *See* UTAH CODE § 78B-2-307(3) ("An action may be brought within four years . . . for relief not otherwise provided for by law."); *Quick Safe-T Hitch, Inc. v. RSB Sys. L.C.*, 2000 UT 84, ¶¶ 15, 16, 12 P.3d 577 (applying a four-year statute of limitations to an action for declaratory judgment); *Johnson v. Utah-Idaho Cent. Ry. Co.*, 249 P. 1036, 1041 (Utah 1926) (applying a four-year statute of limitations to a takings claim).

1. County Defendants

¶72   The inverse condemnation action and the Sixth Cause of Action against the County defendants are barred by the statutes of limitations. The Sixth Cause of Action accrued in 2000, and the inverse condemnation action accrued by 2009. *Supra* ¶ 52. So, unless an exception to the statutes of limitations applies, the Sixth Cause of Action became barred in 2004 and the inverse condemnation action became barred in 2013.[14]

¶73   The Pinders argue that the statute of limitations should not bar their claims under three theories: the continuing tort doctrine, the law-of-the-case doctrine, and federal tolling under 28 U.S.C. section 1367(d).[15] As discussed below, none of these

---

We advise any future litigant making similar arguments to provide an originalist analysis of that phrase.

[14] The Third District Court dismissed the Sixth Cause of Action against the County defendants for lack of subject matter jurisdiction under the UGIA. It did not dismiss it on statute of limitations grounds. But we have the "discretion 'to affirm [a] judgment on an alternative ground if it is apparent in the record,'" *Olguin v. Anderton*, 2019 UT 73, ¶ 20, 456 P.3d 760 (alteration in the original) (citation omitted), and we do so here.

[15] Notably, the Pinders do not argue that the equitable discovery rule tolled the statute of limitations. One circumstance in which the equitable discovery rule tolls a statute of limitations

(continued . . .)

exceptions apply here. The inverse condemnation action and the declaratory relief action are thus barred by their applicable statutes of limitations.

(i) Continuing Tort Doctrine

¶74 The Pinders argue that their inverse condemnation action is not time-barred because the continuing tort doctrine applies.[16] We reject this argument because a single taking does not fit the mold of a continuing tort.

¶75 The continuing tort doctrine is an exception to the general rule that "the statute of limitations begins to run when the cause of action accrues." *Bingham v. Roosevelt City Corp.*, 2010 UT 37, ¶ 56, 235 P.3d 730 (citation omitted). The exception tolls "the statute of limitations while . . . tortious conduct continues unabated." *Id.* When deciding whether the continuing tort doctrine applies, we look only to whether the tortious *act* is continuous. *See id.* ¶ 57. We do not look to whether the "*harm* resulting from the act" is continuous. *Id* (quoting *Breiggar Props., L.C. v. H.E. Davis & Sons, Inc.*, 2002 UT 53, ¶ 10, 52 P.3d 1133). A tort is continuous when "multiple acts" constituting that tort "have occurred and continue to occur." *Id.* ¶ 57 (quoting *Breiggar Props.*, 2002 UT 53, ¶ 11); *see also id.* ¶ 55 (holding that the defendant's "ongoing pumping of . . . wells constitute[d] a continuing tort"). But a tort is permanent—as opposed to continuous—if the tortious act or acts "have ceased to occur." *Id.* ¶ 57.

¶76 The Pinders argue that the continuing tort doctrine applies to their inverse condemnation action: "The defendants could have, and should have, returned [the Pinders'] property at

_____

is when a plaintiff does "not know about the events giving rise to his claim due to 'the defendant's concealment or misleading conduct.'" *Ockey v. Lehmer*, 2008 UT 37, ¶ 36, 189 P.3d 51 (citation omitted). So, if the defendants made misleading statements that kept the Pinders in the dark about the events giving rise to their causes of actions, the Pinders could have argued that the equitable discovery rule tolled the statutes of limitations. Because they have not made this argument, we do not consider whether the equitable discovery rule tolls the statutes of limitations.

[16] This argument does not apply to the Sixth Cause of Action; the Pinders argue only that it applies to their "right to challenge the unconstitutional taking or the ongoing deprivation."

any time to abate the harm. Their refusals to abate the harm did not bar [the Pinders'] right to challenge the unconstitutional taking or the ongoing deprivation." We disagree.

¶77   Here, the Pinders do not allege that the defendants have effected several takings; they allege that the defendants effected a single taking. And the ongoing deprivation of the property was just a harm resulting from the alleged single taking. *See Ohio Midland, Inc. v. Ohio Dep't of Transp.*, 286 F. App'x 905, 913 (6th Cir. 2008) ("If this court were to accept the plaintiffs' theory that a taking is continuous until it is reversed, then all takings would constitute 'continuing violations,' tolling the statute of limitations. There would effectively be no statute of limitations, and the plaintiffs' theory could easily be extended to many other violations outside of the takings context. This is not the law."). The Third District Court thus did not err in holding that the continuing tort doctrine does not apply here.

(ii) Law-of-the-Case Doctrine

¶78   The Pinders argue that the law-of-the-case doctrine precludes the defendants from raising a statute of limitations defense. The law-of-the-case doctrine allows a court to "decline to revisit issues within the same case once the court has ruled on them." *McLaughlin v. Schenk*, 2013 UT 20, ¶ 22, 299 P.3d 1139 (citation omitted).

¶79   According to the Pinders, the law-of-the-case doctrine prevents the defendants from relying on a statute of limitations defense because the defendants unsuccessfully raised that defense in the Eighth District Action and the Federal Action. But the law-of-the-case doctrine, as its name implies, applies only to "issues within the same case," — that is, issues within the Third District Action. So, what happened in the Eighth District Action and the Federal Action is irrelevant under the law-of-the-case doctrine. The Pinders' argument under the law-of-the-case doctrine thus fails.

(iii) Federal Tolling

¶80   The Pinders also argue that their claims are tolled under a federal statute: 28 U.S.C. section 1367(d). Put simply, section 1367(d) tolls the statute of limitations while state-law claims— "brought along with federal claims" in federal court by virtue of the federal court's supplemental jurisdiction—are pending in federal court. *Artis v. District of Columbia*, 138 S. Ct. 594, 597–98 (2018). Section 1367(d) does not apply to the Pinders' claims because, although they brought the Federal Action in 2011, they

brought no state-law claims there. They asserted only a claim under 42 U.S.C. section 1983. And because they brought no state law claims, section 1367(d) does not apply.

2. Assistant Attorneys General

¶81   The inverse condemnation action and the Sixth Cause of Action against the AAGs are also barred by their statutes of limitations. These claims accrued by 2009. *Supra* ¶ 57. And because the claims accrued by 2009, the statutes of limitations began to run then as well. As a result, their four-year statutes of limitations barred them by the time the Pinders filed the Third District Action in 2015. The Third District Court thus properly dismissed the inverse-condemnation action and the Sixth Cause of Action as barred by their statutes of limitations.[17]

*D. Issues with Preservation or Waiver*

¶82   Two of the Pinders' arguments on appeal run into issues with preservation and waiver. First, the Pinders have waived the argument that the Third District Court erred by holding that the State and the Attorney General were dismissed unopposed from the Third District Action. Second, the state due process claim that the Pinders argue on appeal is unpreserved and the federal due process claim they asserted below has been waived.

1. The Causes of Action Against the State and the Attorney General

¶83   We first affirm the district court's dismissal of all the Pinders' claims against the State and the Attorney General. The Third District Court dismissed the claims against the State and the Attorney General because the Pinders had not opposed the State defendants' motion to dismiss as to them. *See supra* ¶ 19. Other than making the naked claim that the Third District Court "erroneously asserted that [the Pinders] had only opposed the motion to dismiss as to [the AAGs]," the Pinders have not challenged this ruling on appeal. Any challenge is, as a result, waived. *State v. Johnson*, 2017 UT 76, ¶ 17, 416 P.3d 443 (holding

---

[17] We do not address here the Pinders' arguments about the continuing tort doctrine, the law-of-the-case doctrine, and federal tolling because the Pinders did not raise those arguments below when opposing the AAGs' motion to dismiss. They are thus unpreserved as to the AAGs. *Infra* ¶ 85 (discussing the law of preservation). Even if they were preserved, they would have failed for the same reasons as we discuss above. *Supra* ¶¶ 74–80.

that a party waives an issue by not properly raising it on appeal). Accordingly, we affirm the Third District Court's dismissal of all the claims against the State and the Attorney General.

2. Due Process

¶84   Invoking article I, section 7 of the Utah Constitution, the Pinders insist on appeal that the defendants violated their right to due process. The County defendants counter with the law of preservation. They say that any state due process claim is unpreserved for appeal because the Pinders brought a federal—not a state—due process claim below. We agree. The state due process claim that the Pinders argue on appeal is unpreserved. And because the Pinders have not challenged the dismissal of their federal due process claim on appeal, they have waived that claim.

¶85   An issue must be preserved for appeal for us to consider it. *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828. "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on [it]." *Id.* ¶ 12 (alteration in original) (citation omitted) (internal quotation marks omitted). That means that the issue must (1) be "specifically raised" before the district court, (2) be raised "in a timely manner," and (3) be "supported by evidence and relevant legal authority." *Donjuan v. McDermott*, 2011 UT 72, ¶ 20, 266 P.3d 839.

¶86   The Pinders argue on appeal that the defendants violated their right to due process under article I, section 7 of the Utah Constitution. The Pinders raised this claim in their amended complaint: "[t]he Defendants deprived [the Pinders] of their property and liberty without due process of law in violation of Section 7." The Third District Court, however, struck that paragraph from the amended complaint because it had not been in the proposed amended complaint. The Pinders have not challenged that ruling on appeal. They thus did not specifically raise the state due process claim in a timely manner to the Third District Court. So, it is unpreserved, and we do not consider it.

¶87   To be sure, the Pinders presented the district court with the issue of whether the defendants violated their *federal* right to due process. Doing so, however, did not give the Third District Court the opportunity to rule on whether the defendants violated the Pinders' *state* right to due process. *Flowell Elec. Ass'n, Inc. v. Rhodes Pump, LLC*, 2015 UT 87, ¶ 21, 361 P.3d 91 ("We are not required to follow U.S. constitutional law when we interpret the Utah Constitution. . . ."). And the Pinders have not claimed on

appeal that the defendants violated their *federal* right to due process; their appellate briefing focuses only on their *state* right to due process. Any challenge to the district court's ruling on the federal due process claim has thus been waived. *Johnson*, 2017 UT 76, ¶ 17 ("[A] party may have preserved an issue [in the trial court], but failed to properly raise it on appeal, thus waiving it."). We affirm the Third District Court's dismissal of the federal due process claim.

## II. THE FOURTH DISTRICT ACTION

¶88   We next review the Pinders' appeal of the Fourth District Action.[18] The Pinders argue that the Fourth District Court erred by denying them attorney fees under three state statutes and one federal statute. We disagree with the Pinders and affirm the Fourth District Court's denial. In doing so, we hold that the Fourth District Court had subject matter jurisdiction over those requests. Then, we hold that the Fourth District Court did not err in denying those requests.

### A. Subject Matter Jurisdiction

¶89   We asked for supplemental briefing as to whether the Pinders' requests for attorney fees in the Fourth District Action are subject to the UGIA's notice-of-claim provisions. We hold that they are not.

¶90   Under the UGIA, "each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function." UTAH CODE § 63G-7-201. An injury includes the "loss of property." *Id.* § 63G-7-102(6).

¶91   But the UGIA waives this immunity "as to any action brought to recover, obtain possession of, or quiet title to real or personal property." *Id.* § 63G-7-301(2)(a). And when the UGIA

---

[18] On appeal, the Pinders argue that the Fourth District Court violated the Utah takings provision. *See* UTAH CONST. art. I, § 22. Specifically, they maintain that the Fourth District Court's "failure to order payment of just compensation effectively severed and deleted the just compensation duty." We take this to mean that the Pinders believe that they brought an inverse condemnation action in the Fourth District Court. But that is incorrect. As the Fourth District Court noted, "the sole relief sought pursuant to the Complaint was the return of the property allegedly held by Defendants."

waives immunity, "consent to be sued is granted, and liability of the entity shall be determined as if the entity were a private person." *Id.* § 63G-7-202(1)(b).

¶92 Here, the defendants, as governmental entities, would normally be immune from suit for the Pinders' injury—"loss of property"—since it resulted from the exercise of a governmental function. *Id.* § 63G-7-201(1); *id.* § 63G-7-102(6). But the UGIA waives this immunity for the type of action the Pinders brought in the Fourth District Action—an action to recover personal property. *Id.* § 63G-7-301(2)(a).

¶93 Because the UGIA waives immunity here, the Pinders can sue the defendants as if they "were a private person." *Id.* § 63G-7-202(1)(b). Private persons are subject to statutes that authorize attorney fees (such as Utah Code section 78B-5-825), and so the defendants here would be as well, even though they are government entities and employees. So, the defendants are not immune from the Pinders' requests for attorney fees.

¶94 Additionally, whether the Pinders complied with the UGIA's notice-of-claim provisions does not matter: the notice-of-claim provisions do not apply to an action to recover personal property because such an action is not a "claim" under the UGIA—i.e., an "asserted demand for or cause of action for money or damages." *Id.* § 63G-7-102(2).

¶95 The Pinders' requests for attorney fees are not claims either and so are not subject to the UGIA notice-of-claim provisions. Although such requests are arguably "asserted demand[s] for . . . money . . . arising . . . under state statutes," *id.* § 63G-7-102(2), the UGIA assumes that a claim must arise *before* the action in the district court is filed. *See id.* § 63G-7-401(2); *id.* § 63G-7-403(2). It does so by requiring a potential plaintiff to "file a written notice of claim with the [governmental] entity *before* maintaining an action," *id.* § 63G-7-401(2) (emphasis added), and to wait until the claim is denied *before* commencing the action. *Id.* § 63G-7-403. Thus, when a basis for attorney fees arises *during* the action itself, the request for attorney fees is not a claim, and the UGIA's notice-of-claim provisions do not apply.

¶96 The Fourth District Court therefore had subject matter jurisdiction over the requests for attorney fees, no matter whether the Pinders complied with the UGIA.

*B. Attorney Fees*

¶97 The Pinders argue that the Fourth District Court erred by denying them attorney fees. Citing Utah Code sections

24-4-107(d) and 24-4-110, the Pinders argue that "Utah statutes, which express the public policy of the state, provide for payment of 'reasonable attorney fees and court costs from the date on which the seizing agency . . . denied the claim.'" We disagree. The Pinders ignore our case law, which says that in Utah, we generally follow the "traditional American rule that attorney fees cannot be recovered by a prevailing party unless a statute or contract authorizes such an award." *Gregory & Swapp, PLLC v. Kranendonk*, 2018 UT 36, ¶ 47, 424 P.3d 897 (citation omitted) (internal quotation marks omitted).

¶98   The Pinders also argue in their opening brief that they are entitled to attorney fees under two statutes: Utah Code section 78B-5-825 (bad faith attorney fees) and 42 U.S.C. section 1988 (civil rights attorney fees).[19] We affirm the Fourth District Court's denial of attorney fees under these statutes.

1. Utah Code Section 78B-5-825: Bad Faith Attorney Fees

¶99   The Pinders next argue that they are entitled to attorney fees under Utah Code section 78B-5-825 because the defendants acted in bad faith.

¶100 Under Utah Code section 78B-5-825, the court (with exceptions) must "award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." This provision requires the court to find that the claim or defense is "(1) without merit, and (2) not brought or asserted in good faith" before awarding attorney fees. *In re Discipline of Sonnenreich*, 2004 UT 3, ¶ 46, 86 P.3d 712.

¶101 Whether a claim or defense is "without merit" is a question of law, which we review for correctness. *Id.* ¶ 45. "To determine whether a claim [or defense] is without merit, we look to whether it was frivolous or of little weight or importance having no basis in law or fact." *Migliore v. Livingston Fin., LLC*, 2015 UT 9, ¶ 31, 347 P.3d 394 (citation omitted).

---

[19]   The Pinders argue in their reply brief that they are entitled to attorney fees under other statutes, too. But because the Pinders did not raise those arguments in their opening brief, we do not consider them. *See Taylor v. Univ. of Utah*, 2020 UT 21, ¶ 50, 466 P.3d 124.

¶102 Whether a claim or defense was "not brought or asserted in good faith" is a fact-intensive mixed question, which we review for clear error. *See Bresee v. Barton*, 2016 UT App 220, ¶ 15, 387 P.3d 536. "A finding of bad faith requires 'a factual determination of a party's subjective intent.'" *Migliore*, 2015 UT 9, ¶ 32 (citation omitted).

> To find that a party acted in bad faith, the court must conclude that at least one of the following factors existed: (i) The party lacked an honest belief in the propriety of the activities in question; (ii) the party intended to take unconscionable advantage of others; or (iii) the party intended to or acted with the knowledge that the activities in question would hinder, delay, or defraud others.

*Id.* (citation omitted).

¶103 The Pinders argued below that they were entitled to attorney fees because the defendants raised their defenses in bad faith and their defenses were without merit. The district court disagreed, finding that the defendants did not act in bad faith:

> As [the defendants] correctly argue, they were arguably the prevailing parties in actions before the Eighth District, the Federal court, and the Tenth Circuit. In addition, they have received favorable rulings on several motions before the Third District Court. It would be inappropriate for this Court to find that bad faith exists, and warrants the imposition of attorney fees, in light of these results.

¶104 The Pinders' argument on appeal for attorney fees under Utah Code section 78B-5-825 consists of one paragraph. They first summarily conclude that the defendants' "resistance to their legal obligations was without merit." (Footnote omitted.) Then they urge us to find that the defendants acted in bad faith, alleging that the defendants "knew they had no legal authority to act in a manner inconsistent with Plaintiffs' property rights." The Pinders support this argument by citing an alleged lie told by Sheriff Boren that one of the seized weapons was an illegal sawed-off shotgun.

¶105 The Pinders have not met their burden of persuasion on this argument. *Supra* ¶ 36 (discussing an appellant's burden of persuasion). First, they did not explain with reasoned analysis how the defendants' defenses in the Fourth District Action was "without merit." Thus, we have no knowledge of what defenses

the defendants asserted in the Fourth District Action, if any, and whether they were without merit. Second, the one shred of evidence (complete with a record cite) that the Pinders point to for proof of bad faith is that Sheriff Boren asserted that one of the weapons was an illegal sawed-off shotgun. But the record shows that the defendants were willing to hand over the shotgun once they understood "the legal basis for [the Pinders'] claim that the shotgun was not an illegally modified weapon." Without more, we cannot hold that the Fourth District Court clearly erred by concluding that the defendants did not act in bad faith. For that reason, the Pinders do not merit attorney fees under Utah Code section 78B-5-825.

2. 42 U.S.C. Section 1988: Civil Rights Attorney Fees

¶106 Last, we affirm the dismissal of the request for attorney fees under 42 U.S.C. section 1988 because it is without merit. Section 1988 says, in part, that "in any action or proceeding to enforce" certain civil rights statutes—including 42 U.S.C. section 1983—"the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. But, in the Fourth District Action, the Pinders did not rely on any of the civil rights statutes listed in 42 U.S.C. section 1988. They relied only on Utah Code section 24-3-104. For that reason, 42 U.S.C. section 1988 does not afford the Pinders attorney fees.

## CONCLUSION

¶107 We affirm the Third District Court's dismissal of the Pinders' causes of action. We also affirm the Fourth District Court's denial of attorney fees.